Filed 3/20/15  P. v. Rios CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061540 |
| v. | (Super.Ct.No. FSB1302957) |
| MICHAEL PHILLIP RIOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge.  Affirmed with directions.

Michael Phillip Rios, in pro. per.; and Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant of first degree burglary (count 1; Pen. Code, § 459).[1] In a bifurcated trial thereafter, the jury found true allegations defendant had suffered a

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

prior strike conviction (§§ 667, subds. (b)-(i), 1170.122, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)), and five prior prison terms (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate, determinate term of 20 years' incarceration consisting of the following: the upper term of six years, doubled pursuant to the prior strike conviction, on the burglary conviction; a consecutive five years on the prior serious felony conviction; and three consecutive years on three of the five prior prison term allegations.[2]

After trial counsel filed the notice of appeal, this court appointed appellate counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436, and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts, and identifying three potentially arguable issues: (1) whether the court erred in denying defendant's *Marsden*[3] motion; (2) whether the court erred in permitting admission of purportedly prejudicial photographic exhibits of defendant showing his tattoos; and (3) whether the court erred in imposing the upper term on count 1.

---

[2] Defendant had been sentenced to prison on three prior occasions based upon a total of five felony convictions; thus, the court sentenced defendant to one consecutive term for one of the five prior prison terms, which was alleged to have been based on three convictions occurring on the same date. (*People v. Banks* (2014) 59 Cal.4th 1113, 1170 [consecutive terms served on prior felony convictions are considered only a single prior separate prison term supporting only a single one-year sentence enhancement].)

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Defendant was offered the opportunity to file a personal supplemental brief, which he has done. In his brief, defendant reiterates appellate counsel's concern regarding the allegedly prejudicial nature of the photographic exhibits admitted, which showed defendant's tattoos with particular emphasis on exhibits Nos. 19 through 22. Defendant additionally contends defense counsel committed prejudicial ineffective assistance of counsel (IAC) noting that had counsel "applied himself to my case and been prepared adequately[,] his objections and arguement [*sic*] would have been more eloquently spoken and been clearer in conveying the injustice of the admission [*sic*] of prejudicial evidence."

We have independently found clerical errors in the abstract of judgment and shall direct the trial court to correct them. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

Prior to trial, defendant orally moved for a *Marsden* motion, on which the court proceeded by way of an in camera hearing. Defendant stated his current counsel was the fifth attorney assigned to him in the instant case. Defendant's main point of contention appears to have been that his counsel had conveyed that defendant had little likelihood of prevailing at trial. Defense counsel agreed that the best result for defendant would probably have been to have taken the prosecution's previous plea offer of eight years' incarceration while receiving 50 percent credits. The court observed that it is an attorney's "obligation to let you know what the offer is and to let you know what he

3

thinks about the offer, . . . but he has to make sure that you understand what . . . the consequences are." The court denied defendant's motion.

At trial, Ray Bowling, who was watching and providing maintenance for two adjacent homes owned by Jaime Rodriguez, testified that on July 11, 2013, he observed "two people walking down the street, and then I didn't see them pass. So when I looked out, I could see that the next door house, the gate had been opened, and we always kept it closed." One of the men had on a blue shirt; the other wore a white shirt.

Bowling "went around to see if I could see anything, and then I heard like a, I don't know, I guess like glass breaking." He "thought somebody was breaking into the house." Bowling went into the backyard and looked over the fence, but did not see anyone. He yelled for anyone there to leave, exclaiming that he was calling the police. Bowling called the police.

A police helicopter arrived within a couple minutes. Bowling saw someone in a blue shirt jump the fence to the adjoining backyard of another neighbor.

A tactical flight officer with the San Bernardino County Sheriff's Department testified he was dispatched to a reported residential burglary in progress that day at 12:30 p.m. He "noticed two subjects in the rear yard of the home." Both looked up at the helicopter. The individual in the blue shirt climbed over a six foot wall or fence into an adjacent yard and made his way toward Orange Street.

San Bernardino police officers were also dispatched to the scene. When they arrived, the flight officer informed them two suspects were in the backyard. They were

4

later informed one of the suspects had fled.  The officers went into the backyard where they found Alberto Pacheco sitting on a five-gallon bucket.  The officer detained and searched Pacheco finding "pockets full of miscellaneous phones, chargers, papers, [and] miscellaneous papers."  They also found a backpack next to Pacheco with "[m]iscellaneous tools, walkie talkies, [and] some clothing items."

A probation officer dispatched to the location testified that once the helicopter arrived, dispatch reported a suspect running from the scene.  The probation officer saw an individual who matched the suspect's description.  The probation officer got out of his car and detained the suspect, whom he identified at trial as defendant.  The flight officer confirmed for the probation officer that the detained suspect was the individual the flight officer saw fleeing the residence.  Probation detained defendant within two minutes of defendant's jump over the wall.

A San Bernardino Police Department parole officer arrived and took defendant into custody.  Defendant "was disheveled.  He was sweating profusely while he was in . . . custody and while he was seated in the back seat of [the] unit.  His shirt was dirty.  And I had observed some abrasions on his arms also."

The bars on a window at the burglarized residence had been broken or bent off the wall.  The air conditioning unit, which normally sat in a bedroom window, was lying on the floor in the living room.  The air conditioner was heavy and would require two people to move.  The window glass was broken.

The victim, Jaime Rodriguez's daughter who was living in the home at the time, testified she had left the home either the night before or the morning of the incident. When she returned, "everything was kind of a mess and thrown about." The victim took inventory and found a "bunch of miscellaneous stuff such as a spare phone, chargers of the phone, and . . . a Nook and possibly a laptop charger" missing. Cosmetics, clothes, kitchen utensils, movies, food, and a coffee pot were also missing.

Defendant's mother testified defendant had sustained "a brachial plexus . . . which affected his shoulder, his entire arm, and his hand on his left side" from complications at birth. The condition "causes severe nerve damage in the neck which affects the shoulder, the arm, and the hand, because of the severity of the nerve damage, what it does is it keeps you from developing muscle tissue because the nerve damage is so severe." Defendant cannot lift heavy objects with his left arm because he "doesn't have muscle tissue because of the severity of the nerve damage." His left upper arm is much smaller than his right. Defendant would not be able to lower an air conditioning unit to the ground by himself or jump a six-foot fence on his own.

At sentencing, the court observed that defendant "has led a lifetime of crime, beginning as a juvenile and continuing from there. His convictions are numerous. [¶] The crime in this case shows criminal sophistication and planning, in that, he was with another participant. They apparently . . . had what the Court would describe as burglary tools in the backpack. They were out looking for somewhere where they could steal. [¶]

6

The incident did cause [a] great amount of psychological harm to the young lady [who] was residing inside the residence."[4]

The court further noted, "The defendant was on parole at the time of the offense. And for that reason the Court thinks the aggravated term is appropriate. Given the defendant's lifetime of crime his [robbery convictions] as a juvenile, his multiple convictions as an adult, the fact that he was on parole at the time this offense occurred . . . the Court thinks the aggravated term is appropriate."

DISCUSSION

Defendant contends he was unconstitutionally prejudiced by the admission of exhibits Nos. 19 through 22 because they reflected defendant's tattoos bearing the name of the gang "Florenza 13." We disagree.

Prior to trial, defense counsel moved to exclude pictures of defendant that reflected gang names. The People argued the pictures were relevant to show abrasions defendant had incurred by jumping over a wooden fence and cinder block wall. The court found objectionable a picture of defendant's chest and stomach on which tattoos appeared, one reading "florenza 13" and another of a pentagram. The court ordered the People to cover up those tattoos; however, "I would indicate[] if there were scrape marks along the 'florenza' tattoo on the abdomen, I'd probably rule those admissible. But since

---

**4** The victim testified she did not feel comfortable in the home after the burglary and moved shortly thereafter.

7

the scrape marks appear to be limited to an area where we can cover up the 'florenza 13' tattoo, I think that's probably in the best interest to do that."

On another date, the court observed, "And there is an issue with what is now marked as Exhibit 17, which was the photograph showing abrasions to [defendant's] chest area that I had the D.A. cover up or eliminate. Actually, she cropped the photo to delete the—as I recall it's the 'florenza' tattoo. And then there was a tattoo of a head around that florenza tattoo that had a pentagram, satanic image. So that's been cropped out of the photo." The court reiterated the pictures of defendant would be admitted to show the abrasions he had incurred.

Defense counsel maintained an objection to admission of the pictures contending the tops of the letters of the gang name remained visible. The court observed, "Your client has tattoos that are going to be visible to the jurors anyway." The court reasoned that there was nothing "prejudicial about what remains in the photograph and certainly unduly prejudicial things have been removed. And so it does relate to, and corroborate, testimony of the officers and also [defendant's] statement that he got abrasions running and jumping over the fence running from the police."

After the People rested its case, the court noted, "First of all, Exhibits 1 through 18 are going to be admitted, except for Exhibit No. 2, which was the uncropped photograph showing the tattoos on [defendant's] chest and abdomen that displayed some of the things that the Court was concerned about, particularly the Florencia 13 tattoo and the face with

the pentagram on it. And I believe 17 was the exhibit that replaced No. 2 to go to the jury."

Defense counsel renewed the prior objection that exhibit No. 17 was unduly prejudicial. The court ruled, "I will not find them unduly prejudicial and for those reasons the Court will not exclude them. I will admit them. So 1 through 18 are admitted with the exception of photo No. 2 which will be retained as a Court's exhibit."

After defendant's mother testified, the People noted, "Since [defense counsel] has put his client's physical state at issue, I want to show pictures of [defendant] without his shirt so that the jury can see his actual muscular definition and the exact differences that exist between the right and the left shoulder seeing that the testimony has been essentially that his arm is significantly smaller, his left arm is significantly smaller than the right. I think the jury is entitled and needs to see the actual difference since we do have that evidence available to us."

Defense counsel objected, "I am absolutely opposed. These photos are not part of this case. They were taken in relation to a separate investigation. They were never proffered as evidence in this case. And I have not put his physical condition into—this is way beyond the scope of direct examination." The court noted, "It's not beyond the scope because the mom testified about his physical condition and placed his physical condition at issue. And I think you are doing this to combat the evidence of the air conditioner being moved and how heavy it was and proffering he couldn't have assisted in lifting that because of this physical condition."

9

Defense counsel stated, "These photos are totally [Evidence Code section] 352 objectionable because they were not proffered as part of this case. And they show tattoos which I was opposed to and in particular Exhibit No. 2. And now it's gone way beyond that and it's just not fair and proper. This is totally improper to allow these photos when the questions that have been responded to are not reflecting—this photo business is totally improper. It is not part of this case." The court reiterated, "You have placed [defendant's] physical ability at issue. Mom has testified about the differences in his arms. I am trying to see if I can—because these do show—actually, these do show differences in the arm size and structure of his right and left arm."

The court ruled, "All right. We'll have them marked. The one from the front if we can cover up the F13 to some extent." "And defense has tendered it as an issue. If this had not been an issue, I wouldn't have allowed it, but I think it is now more probative than prejudicial." "This was not proffered as direct evidence by the People. They didn't make it an issue. This would fall in the category of impeachment . . . ." "And in order to impeach [defendant's mother], first of all, the probation doesn't have an obligation to turn over pure impeachment evidence, and didn't know it was going to be an issue until [defendant's mother] testified to the extent of her testimony so if you can cover up the F13 part, the rest of it is very relevant to the issue proffered by the defense as a way for the prosecution to combat and rebut that testimony . . . ."

Defense counsel argued, "My request is to cover the entire chest. The shoulders and arm is what is in issue here, not the chest." The court ruled, "With respect to

10

covering, I will have [the prosecutor] cover the stomach area that shows the Florencia 13 and the face with the pentagram on it. However, there's no getting around the tattoo on his chest or on his arms. The tattoo on the chest is going to have to come in because the chest is in issue as far as being able to develop muscle and using that arm. You can't develop pectoral muscles without being able to use that side of your body and either push or pull or do something with it. Mostly pushing for the pectoral muscles. But then the tattoos along the arm, you client chose to have them put on there."

We have reviewed the exhibits at issue. Exhibit Nos. 3, 4, 5, and 17 appear to show defendant shortly after he was arrested; defendant is handcuffed. Each show abrasions; the former exhibits to defendant's right arm and the latter to defendant's chest. Although all of them show tattoos, none of them show gang name tattoos or a pentagram.

Exhibit No. 19 has a taped Post-it note covering defendant's stomach which, presumably, reflected both the "F13" gang name and the pentagram with a face though, notably, a pentagram appears on defendant's neck, which would presumably have been visible to the jury even as defendant wore clothing in court. Exhibit No. 19 also reflects a tattoo reading "GANGSTERS" across defendant's entire chest. Exhibit No. 17 shows part of the tattoo, but not enough to read the word. Exhibit No. 19 additionally shows that defendant's pectoral muscles are largely developed and that his left upper arm is demonstrably smaller than his left upper arm.

Exhibit No. 20 reflects an unredacted tattoo reading "F13" largely across the entire height and width of defendant's back. It likewise shows that defendant's left upper arm

11

is demonstrably smaller than his left upper arm. Exhibit No. 21 shows defendant's left profile reflecting his large upper left arm. Exhibit No. 22 shows defendant's right profile, which appears to conflict with other pictures in that defendant's right upper arm appears large in profile.

"'It is within a trial court's discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. (Evid. Code, § 352.) Our review on this issue is deferential. A trial court's decision whether to exclude evidence pursuant to Evidence Code section 352 is reviewed for abuse of discretion.' [Citation.]" (*People v. Thomas* (2011) 51 Cal.4th 449, 488 [Where evidence of the defendant's appearance was probative, admission of photographs of the defendant's gang tattoos was not outweighed by prejudice, particularly where there was no evidence presented that the tattoos were gang related and the court instructed the jury the photographs could only be utilized for a specific purpose unrelated to gang membership.].)

Here, the photographic exhibits were the subject of much argument over the course of three separate days concerning their probative value versus their prejudicial effect upon the jury. Although initially the court found the photographs of defendant's "F13" tattoos prejudicial and ordered redaction of those portions of the photographs, once defendant put at issue his physical ability to carry the air conditioning unit and scale fences, the court found such redaction would not allow the jury the ability to effectively

12

evaluate defendant's claims. The photographic exhibits admitted permitted such an evaluation.

Nonetheless, the court still ordered redactions of some of defendant's tattoos. Regardless, there was no testimony to establish that defendant's tattoos were gang related or that defendant was or had been a member of any gang. Likewise, the court instructed the jury that certain evidence had been admitted for a limited purpose and that the jury could only consider the evidence for that purpose and no other. (CALCRIM No. 303.) The court acted within its discretion in admitting exhibit Nos. 19 through 22. (*People v. Navarette* (2003) 30 Cal.4th 458, 496 [admission of photographic exhibit of tattoo on the defendant's arm was not unduly prejudicial because the "photograph in question was relevant to show that defendant had fresh scratches on his body when arrested shortly after" his commission of the crime].)

Moreover, even if error, the admission of the exhibits was harmless considering the tactical flight officer's testimony he had witnessed defendant at the burglarized residence and visually followed him for the entire two minutes defendant fled until he was detained. (*People v. Medina* (1995) 11 Cal.4th 694, 749-750 [tattoo evidence harmless in light of substantial other evidence properly admitted].) For the same reasons, we hold defendant's IAC claim fails. (*People v. Banks* (2014) 59 Cal.4th 1113, 1170 [IAC claim fails where the defendant fails to establish constitutionally deficient performance and no reasonable probability of more favorable result].)

13

"It is well settled that '[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]' [Citation.] When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, [appellate courts have] the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties. [Citation.]" (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

We have independently observed clerical errors in the abstract of judgment. The abstract of judgment omits the manner of defendant's conviction, by jury trial, and does not reflect that defendant's sentence was imposed pursuant to a true finding on the prior strike conviction allegation. Thus, we shall direct the trial court to correct the clerical errors in the abstract of judgment.

Under *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues. (*People v. Myles* (2012) 53 Cal.4th 1181, 1207 [no abuse of discretion in denying *Marsden* motion "'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel'"]; *People v. Black* (2007) 41 Cal.4th 799, 816 [only one legally sufficient aggravating factor is necessary to support a court's imposition of the upper term].)

## DISPOSITION

The superior court is directed to correct the abstract of judgment to reflect that defendant was convicted by jury trial and that the court imposed sentence pursuant to section 667, subdivision (e)(1). The corrected abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.

15